No. 32,552

The Union Central Life Insurance Company, *Appellant,* v. Charles C. Stevens et al., *Appellees.*

(57 P. 2d 57)

Opinion filed May 9, 1936.

*O. R. Stites* and *Jay Sullivan,* both of Emporia, for the appellant.
*Roscoe W. Graves,* of Emporia, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This appeal involves only the amount due on notes given in connection with an amortized mortgage loan.

On January 19, 1917, defendant Charles C. Stevens, borrowed from plaintiff the sum of $6,500 on an amortized loan plan, and to evidence the debt executed one promissory note for $13, due February 1, 1917, and thirty notes, each for the sum of $494.97, one being due on February 1, 1918, one on a like date of each succeeding year thereafter until February 1, 1947. Each of these notes, except the last, contained this language:

"This note is secured by a mortgage deed of even date. The right is reserved to prepay at any time at the home office of said company in Cincinnati, Ohio, by discounting it at the rate of five percentum, interest compounded annually."

The notes were secured by a real-estate mortgage. Thereafter Stevens paid the notes due prior to December 6, 1920. About that time, upon Stevens' request, the company agreed to accept a total payment of $2,500 to be applied on the notes according to their terms, and to release a portion of the mortgaged real estate. The payment was made as of December 6, 1920, and the portion of the land released from the lien of the mortgage. The company made a computation of credit due Stevens, credited him with the sum of $163.95 on each of the twenty-seven notes remaining unpaid, leaving a balance due on each of $331.02. Thereafter Stevens continued to pay the notes as they fell due until February 1, 1932; on December 7, 1932, he made a payment, leaving a balance of $199.16 on the note due February 1, 1932. The rest of the notes remained unpaid. As to the above facts there seems to be no dispute.

On May 23, 1933, plaintiff filed an action in foreclosure, asking for judgment for amounts due on specified notes, all alleged to total $3,607.59, as of May 23, 1933, with interest from that date at ten percent per annum, and for foreclosure of its mortgage. It

may here be stated the appellant attached to its petition a schedule showing the entire series of notes, the allocation of the principal and interest, and showing the division of the proceeds of each note into principal, interest and expense; the testimony, later offered, showing the divisions were for bookkeeping purposes.

All of the defendants joined in an answer denying that Charles C. Stevens was indebted in the sum of $3,607.59, and alleging that on December 6, 1920, he made a payment on the principal sum of $2,500 and received credit for only $2,073.32, and that items charged as interest, $103.67, and expense, $158.22, were in violation of the notes and he was given no credit for $164.79, and that he should be credited with the entire sum. It is quite obvious the above figures were taken from the schedule attached to the petition. It was further alleged in the answer the notes provide for prepayment, that defendant was not given the discount provided and that there is no provision in the notes for charges and expenses in the sum of $463.82. At the trial, a deposition of the manager of appellant's collection division was offered, and his method of calculation of the amounts due on the loan seems to have been confusing to the trial court. Defendants using an interest rate mentioned in the petition, but which the notes did not disclose, calculated the amount they claimed was due by taking $6,500 as principal, 6.44 percent as the rate, and computing the balance due by the partial-payment method. After arriving at a balance, they deducted $125 as being 5 percent of the $2,500 payment. The trial court adopted this method of calculation, but did not give credit for the $125, and rendered judgment for $2,662.14 as of February 25, 1935.

Plaintiff appeals, its abstract stating its motion for a new trial was filed and overruled, although the only journal entry shown does not mention such motion and ruling. Appellees move to dismiss, because the record does not show a motion for new trial to have been filed, presented and denied. In appellant's brief is set out a copy of the motion for a new trial, together with a copy of the minutes on the trial docket showing the motion to have been denied. Under rule 49 of this court, it was appellee's duty, as prevailing party, to prepare a journal entry for filing under rule 50. Even though it may be said the minutes on the trial docket are not a part of the record, and even though the above rules were not complied with, under the circumstances it would be futile to send the case back to the trial court simply to have a record made of what seem to be undisputed

facts. We shall consider the appeal on the errors assigned; that the court erred in rendering judgment for an amount less than the amount due and owing to plaintiff from defendant, and in denying the motion for a new trial.

Before discussing the matter of calculating the amount due, some observations may be pertinent. In the making of an amortized loan—and there is no dispute that the one in question is such—the purpose is to provide for the gradual extinction of the debt in advance of final maturity by an annual charge or contribution which will be sufficient to discharge the debt at the final maturity. The amount named as principal in the note evidencing the debt includes not only the amount loaned but the interest thereon at some definite rate, and all calculated in such manner that by an equal payment for a stipulated number of months or years the debt and interest will be fully paid when the last installment is paid. It is not uncommon that in determining the annual payment, there is included as part thereof the net interest which the lender expects to receive as well as expense in making the loan and in taking care of it. Insofar as the borrower is concerned, it makes no difference what elements the lender may choose to include in determining his rate of return, his concern is the aggregate rate as reflected in the periodical payments to be made. The borrower's liability is determined by the terms of his note or notes, not by the bookkeeping methods of the lender. The making of amortized loans is common with lenders of money on real-estate security. Practically all mortgages made by building and loan associations are on an amortized plan or some modification of it, as are loans made on real-estate security by the various lending agencies of the federal government. The notes given under such a plan bear no interest prior to maturity as each note, where separate notes are given, or each installment where one note providing for installments is given, includes payment of both principal and interest. The matter of computing the amounts of these periodical payments at a stipulated interest rate, requires a rather thorough knowledge of mathematics. In actual practice, resort is had to prepared and published standard tables, such as Glover's Tables of Compound Interest Function, etc. These various publications, with variations dependent on method of presentation, show the same or substantially the same amounts, rates, etc., and are accepted as accurate.

In the case before us the appellee on January 19, 1917, borrowed

$6,500, payable $13 on February 1, 1917, and the balance in thirty annual equal payments, coming due serially, of $494.97. The total of these notes is $14,862.10. A computation from the above-mentioned interest tables shows that the interest was calculated at the rate of 6.44555 percent, although for practical purposes in calculation the first note of $13 was not fully considered, and the remaining notes were figured at 6.44 percent. With the exception of the note last due, each contained the provision for prepayment quoted above. It may be observed that this provision is a privilege to the maker, and if availed of, he is penalized in that his notes are based on a higher rate of interest than the discount rate allowed him.

On the trial of the action, as indicated by the pleadings, the primary question was whether appellee received full and proper credit for the $2,500 payment made December 6, 1920. Although ignored by appellee in the calculation made by him, under his answer there is no doubt that it is to be credited according to the terms of the notes. Appellee's computation, which entirely ignored the notes and was based on the assumption that appellee had borrowed $6,500 with interest at 6.44 percent payable annually, was plainly erroneous.

Appellant, in arriving at the amount of credit to which appellee was entitled when the $2,500 was paid, properly determined the loan had still to run 26₁ years, 1 month and 25 days. According to the above interest tables, the present value of an annual payment of $1 for 26 years at 5 percent compounded annually is $14.375 which, multiplied by $494.97, the face of each note, amounted to $7,115.19. The note due February 1, 1921, being the twenty-seventh note, was added, making $7,610.16, and this amount was discounted for 1 month and 25 days at the contract rate, the result being $7,552.46, the amount which on December 6, 1920, would have fully paid the notes discounted as provided therein. It must be remembered that this amount was not paid. To determine what portion or fraction thereof $2,500 would pay, the appellant, using that amount as a numerator and the amount then due, $7,552.46 as a denominator, multiplied the amount of the original loan, $6,500, and obtained a result of $2,153. It was thus determined that $2,153 equals that part of the loan which $2,500 would pay when discounted for 26 years, 1 month and 25 days at 5 percent compounded annually.

By further use of the above tables, it was determined the maker

was entitled to a credit of $163.95 on each unpaid note. We need not go further into detail concerning this proof, all of which was contained in the deposition referred to. The court then heard testimony of another witness as to his conclusions concerning the meaning of the testimony in the deposition. Apparently the method of calculation was not clear to the court. There being no dispute as to the facts, however, the court should have made its own computation. We have checked the appellant's computation and, while it is cumbersome, as a result, appellee got slightly more credit than he was entitled to, although it is possible the discrepancy occurred through use of a less complete calculating rate than we have used. Our calculation may be summarized as follows: The anniversary date of the notes is February 1. In order to calculate as of even years, we find that payment of $2,500 on December 6, 1920, discounted at 5 percent, was equivalent to $2,398.79 on February 1, 1920, when twenty-seven notes of $494.97 remained unpaid. By reference to the above-mentioned tables, it will be found that on February 1, 1920, a payment of $1, money being valued at 5 percent compounded annually, would be worth per year for twenty-seven years $0.06829186. This rate applied to $2,398.79, the value of the $2,500 payment at the beginning of the twenty-seven-year period, produces a result of $163.81, or the amount of credit appellee was entitled to on each unpaid note. It will be observed the appellant gave appellee credit for $163.95, or fourteen cents more per note. Hence, he was not hurt. And we observe that after the giving of the credit of $163.95, the appellee continued for eleven years to pay the notes as they matured annually, and all without complaint he had not received full credit. We find that the appellee received full credit for the payment of the $2,500 made on December 6, 1920.

As we understand appellee's contention, he does not dispute the correctness of the appellant's claim, once it has been determined he received proper credit for the $2,500 payment. Although our computation shows a slightly larger amount due, from the record it appears that when the action was commenced on May 23, 1933, there was due $199.16 with interest at 10 percent from December 7, 1932, on the note due February 1, 1932; that there was due a balance of $331.02 on the note of February 1, 1933, with interest at 10 percent; and that there was due a balance of $331.02 on each of the remaining fourteen notes, which notes had a present value as of February 1, 1933, of $3,000.58 when discounted at the contract rate, with interest

on that amount from February 1, 1933, at 6.44 percent, a total of $3,058.80, or a grand total of $3,607.59, with interest at 10 percent from May 23, 1933, and that when the action was tried judgment should have been rendered for that amount.

The judgment of the trial court, insofar as it finds the amount due from appellee, Charles C. Stevens, to appellant is concerned, is set aside, and the cause is remanded with instructions to render judgment in favor of appellant and against appellee, Charles C. Stevens, as above indicated, and for foreclosure of the real-estate mortgage.